PEOPLE v THOMAS

1. CRIMINAL LAW—TRIAL—PRESENCE OF DEFENDANT—DUE PROCESS—
   SUBSTANTIAL RIGHTS.

   Defendants have the due process right to be personally present at
   every stage of the trial where their substantial rights may be
   affected by the proceedings and where their presence relates to
   the fullness of their opportunity to defend against the charge;
   the facts must always be examined to determine whether they
   are such that defendant's absence at that point did or could
   have affected his substantial rights in his defense, and if so,
   defendant has been denied due process without regard to
   whether he could show actual prejudice, but if not, whether
   because there was no substantial right vital to his defense that
   was involved, or because the circumstances showed no signifi-
   cant possibility of impairment of that right, there is no due
   process question and noncompliance with the statute that
   provides for a defendant's personal presence during his trial is
   harmless error (MCLA 768.3).

2. CRIMINAL LAW—TRIAL—PRESENCE OF DEFENDANT—SUBSTANTIAL
   RIGHTS.

   Motions, conferences and discussions of law, even during trial, do
   not involve substantial rights vital to the defendant's participa-
   tion in his defense, under the view generally prevailing.

3. CRIMINAL LAW—WITNESSES—IN-CHAMBERS EXAMINATION—PRES-
   ENCE OF DEFENDANT—DUE PROCESS.

   An in-chambers examination of a prosecution witness bearing on
   a bargain between the witness and the prosecution was an
   inquiry into a matter that was a part of defendant's challenge
   to the credibility of the defendant; therefore, defendant's ab-
   sence from the examination, which defendant's counsel did not
   approvingly participate in but strongly objected to as an inter-
   ruption of his cross-examination of the witness, denied defend-
   ant due process under the Fourteenth Amendment of the

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 309 *et seq.*

[2, 3] 21 Am Jur 2d, Criminal Law § 289.

United States Constitution and his conviction is reversed and a new trial ordered (US Const, Am XIV).

Appeal from Muskegon, Charles A. Larnard, Jr., J. Submitted Division 3 March 9, 1973, at Grand Rapids. (Docket No. 12712.) Decided April 23, 1973. Leave to appeal denied, 390 Mich 772.

Eugene Thomas was convicted of armed robbery. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Paul Ladas,* Prosecuting Attorney, and *James P. Piper,* Assistant Prosecuting Attorney, for the people.

*Balgooyen, Daniels & Balgooyen,* for defendant on appeal.

Before: R. B. BURNS, P. J., and T. M. BURNS and PETERSON,* JJ.

PETERSON, J. Defendant appeals his jury conviction of the offense of armed robbery.[1] The offense involved a daylight robbery of a grocery store, with defendant contending that he was not a participant and presenting an alibi defense. The store employees and customers were unable to identify the robbers. They pursued them, however, and a neighborhood chase resulted. A neighborhood resident who knew defendant testified that she was told by some children that a man was hiding under a nearby porch and that she then saw defendant run, go down an alley and over a fence. Another man sought refuge in a basement and was caught there with a pistol and the loot. That man, Dwayne Young, testified that defendant was his partner in the robbery.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCLA 750.529; MSA 28.797.

During the cross-examination of Young, he indicated that a deal had been made with the prosecutor by which, in return for his testimony against defendant, Young would have immunity for his role in the armed robbery and also from prosecution on an attempted murder charge. The prosecuting attorney objected that he wanted to correct Young's statement, whereupon the trial judge cut him off and excused the jury.

When proceedings resumed on the record, the judge, Young, the prosecuting attorney and defense counsel were in chambers where Young was questioned about the immunity bargain. It is apparent from the judge's first remarks that the prosecuting attorney had made an objection, not recorded by the court reporter, going to the terms of the immunity bargain, including the contention that the bargain was not in terms for Young's testimony *against defendant* but that he testify truthfully. While the bargain as to immunity from the attempted murder charge was clarified, Young continued to insist that the deal called not for testifying truthfully but for testifying against defendant. Further questioning then disclosed that Young had had no direct conversations with the prosecuting attorney and was merely repeating his understanding arrived at in discussions with his own attorney. After some unsuccessful attempts to locate Young's attorney, the trial judge directed that the trial resume, advising defense counsel that he could continue with his cross-examination as he had been doing and that the prosecution could deal with the problem as it saw fit.

During the in-chambers proceedings, defense counsel moved for mistrial on the ground that the court had interrupted his cross-examination in which he was successfully impeaching the witness.

Defendant asserts that the judge was in effect aiding the prosecution in rehabilitating the witness before recalling the jury. Young did not alter his testimony before the jury, however, and nothing happened in the presence of the jury which could have indicated partiality on the part of the court or lessened the effect of the cross-examination.

Defendant contends, however, that this inquiry in chambers and without his presence denied him his right to public trial and to be present during trial. We are cited to no authority for the proposition that in-chambers conferences or proceedings violate the constitutional right to public trial and do not find such to be the case on these facts. A closer question is presented, however, as to whether his absence violates his constitutional rights or the statutory requirement that

"No person indicted for a felony shall be tried unless personally present during the trial;". MCLA 768.3; MSA 28.1026.

Since *Hopt v Utah,* 110 US 574; 4 S Ct 202; 28 L Ed 262 (1884) and *Lewis v United States,* 146 US 370; 13 S Ct 136; 36 L Ed 1011 (1892), it has been recognized that violation of such a statute may, in some circumstances, be so potentially destructive of the rights of the accused as to amount to a denial of constitutional due process and hence mandate reversal without regard to whether prejudice be shown to have resulted.[2] And in *Snyder v*

[2] The suggestion of *Hopt* that every absence was a denial of due process and that such could not be waived was abandoned by later cases, *e.g., Howard v Kentucky,* 200 US 164; 26 S Ct 189; 50 L Ed 421 (1906), involving both (1) recognition of state law that absence from trial, if without actual resulting prejudice, was not grounds for reversal, and (2) acknowledgment that the right could be waived; to like effect, the sad case of Leo Frank, *Frank v Mangum,* 237 US 309; 35 S Ct 582; 59 L Ed 969 (1915); and, as to waiver, *Diaz v United*

*Massachusetts,* 291 US 97; 54 S Ct 330; 78 L Ed 674 (1934), both majority opinion and dissent agreed on the redundancy of such state statutes, holding that the defendant's presence at trial was implicit in the constitutional scheme of trial rights and constitutionally protected by the Fourteenth Amendment even in the absence of such statute:

"We assume * * * that in a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." 291 US 97, 105–106.[3]

Having noted the nature of the interest raising the right of personal presence to due process protected status, the majority suggested that such vital interest was not necessarily present at every moment of the trial, and was non-existent at nontrial stages of the criminal proceedings:

"Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow. * * * The underlying principle gains point and precision from the distinction everywhere drawn between proceedings at the trial and those before and after. * * * So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would

*States,* 223 US 442; 32 S Ct 250; 56 L Ed 500 (1912). As to waiver, *see also Illinois v Allen,* 397 US 337; 90 S Ct 1057; 25 L Ed 2d 353 (1970), *People v Gant,* 363 Mich 407 (1961); *Cf. People v Percy Harris,* 43 Mich App 746 (1972).

[3] And see the dissent pp 129–132, concluding "that the right is fundamental and assures him who stands in jeopardy that he may in person, see, hear, and know all that is placed before the tribunal having power by its finding to deprive him of liberty or life".

be thwarted by his absence, and to that extent only."
291 US 97, 106, 107, 108.

Cases involving the defendant's absence during testimonial proceedings are rare, presumably because absence then is so clearly incompatible with a fair trial that the question simply does not arise except as to questions of waiver. In the peripheral areas of criminal proceeding, it is perhaps a fair generalization to observe that the cases are neither consistent nor precise, failing to distinguish between trial and nontrial situations, or between due process and prejudicial error questions.[4] See, generally, 21 Am Jur 2d, Criminal Law, §§ 271 *et seq.,* pp 305 *et seq.;* Annos, 25 L Ed 2d 931; 85 ALR2d 1115.

Both majority and dissent in *Snyder* refer to examples of distinct constitutional rights for the exercise of which a defendant's presence is necessary, their very stature as such establishing their necessity to a fair hearing, *i.e.,* the rights of confrontation and cross-examination, and the right to advise with counsel when evidence is being admitted. Another such right, that of jury trial, was involved in *Hopt* and *Lewis, supra,* where each defendant's absence occurred during the process of jury selection.[5] So, where inquiry is made during trial into questions relating to the integrity of the jury, defendant's presence, unless waived, is a due-process requisite. *People v Medcoff,* 344 Mich 108 (1955); *People v Palmer,* 28 Mich App 624 (1970);

---

[4] Even outside the trial context, circumstances and defendant's absence may combine to give rise to a due process question. *See People v Blye,* 233 Cal App 2d 143; 43 Cal Rptr 231 (1965), where defense counsel in effect gave away his client's case in a meeting with the judge and prosecutor.

[5] As also in *Howard v Kentucky,* and *Diaz v United States, supra,* fn 2.

*People v Nickopoulos,* 40 Mich App 146 (1972); *People v Fountain,* 43 Mich App 489 (1972).[6]

In *Medcoff,* the Court, with approval, paraphrased the due-process test of *Snyder*[7] as involving the right of defendants:

"to be personally present at every stage of the trial where their substantial rights may be affected by the proceedings and where their presence relates to the fullness of their opportunity to defend against the charge," *supra,* 115,

and went on to say:

"We recognize that all that transpired between judge and jurors as well as the court's conclusion that there had been no misconduct is in the record before us. Therefore, it is argued that defendants have shown no prejudice. However, the abrogation of defendants' right to be present is not determined from the result and review thereof of the court's inquiry but rather from the mere fact that during the inquiry defendants were not given an opportunity to exercise those privileges which their right to be present affords them. Where such fundamental rights are denied, the guilt or innocence of the accused is not concerned and neither party is put to the burden of showing actual injury or prejudice or the lack of it. Injury is conclusively presumed." *supra,* 117–118.

In an earlier case, however, the defendant was

---

[6] In each case, the inquiry was conducted by the court without the presence of either the defendant or his attorney. But where defendant's counsel was present and participated, no error was found, *People v Bowman,* 36 Mich App 502 (1971); *contra People v Harris, supra,* fn 2.

[7] Also following *Snyder* as to what is not involved, *Medcoff* said, p 115:

"To be sure when considering what is the 'trial' for purposes of this question we can exclude formal and preliminary matters or matters occurring after the hearing on the merits or rendition of the verdict, as well as other matters."

absent during the drawing and swearing of 12 jurors, but his absence at that stage of the trial was held to be insignificant and not prejudicial. *People v Kregger,* 335 Mich 457 (1953). *Kregger* and *Medcoff* are not inconsistent. The difference, we take it, is this: That the facts must always be examined to determine whether they are such that defendant's absence at that point did or could have affected his substantial rights in his defense. If so, as in *Medcoff,* he has been denied due process without regard to whether he could show actual prejudice. If not, whether because there was no substantial right vital to his defense that was involved, or because, as in *Kregger,* the circumstances showed no significant possibility of impairment of that right, there is no due process question and noncompliance with the Michigan statute is harmless error.

So viewed, Michigan's cases involving the absence of the defendant during trial are largely consistent. It is interesting to note that other than those involving the right to jury trial, above, none of these cases resulted in reversal of the appealed conviction.[8] It is significant that in all but three of the cases so affirmed, defendant's counsel was present and participating, and two of the three cases where counsel was absent involved no sub-

---

[8] Those cases fall into three categories: those involving the jury after close of proofs, *i.e.,* instruction, reading back of testimony, or taking of verdict, *People v LaMunion,* 64 Mich 709 (1887), *Frey v Calhoun Circuit Judge,* 107 Mich 130 (1895), *People v Carey,* 125 Mich 535 (1901), *People v Burkhart,* 165 Mich 240 (1911), *People v Jaskulski,* 236 Mich 237 (1926), and *People v Reading,* 307 Mich 616 (1943); those involving a jury view of the scene, *People v Hull,* 86 Mich 449 (1891), *People v Auerbach,* 176 Mich 23 (1913), *People v Kasem,* 230 Mich 278 (1925), and *People v Raider,* 256 Mich 131 (1931); and those involving in-chambers or bench conferences, *People v Camak,* 5 Mich App 655 (1967), *People v Townsend,* 24 Mich App 286 (1970), *People v Bowman,* 36 Mich App 502 (1971), and *People v Lyle Brown,* 37 Mich App 25 (1971).

stantial right vital to the defense.[9] So, in the recent cases of *People v Townsend,* 24 Mich App 286 (1970) and *People v Bowman,* 36 Mich App 502 (1971), it was a significant circumstance that counsel was present and participating on behalf of the defendant, as were the additional facts that no evidence was being received and the questions being considered were inconsequential rather than substantial. They are consistent with the view generally prevailing that motions, conferences and discussions of law, even during trial, do not involve substantial rights vital to the defendant's participation in his defense. 21 Am Jur 2d, Criminal Law, § 289, p 318.

None of the Michigan cases, however, present facts similar to those of the instant case. Instances involving pretrial evidentiary hearings on admissibility of evidence have uniformly applied the trial-presence rule, *e.g., State v Williams,* 19 Ohio App 2d 234; 250 NE2d 907 (1969), *People v Anderson,* 16 NY2d 282; 266 NYS2d 110; 213 NE2d 445 (1965), distinguishing the cases from the routine law conference situation because of the testimonial basis for the ultimate decision on admissibility.[10]

But in *United States v Sinclair,* 438 F2d 50 (CA 5, 1971), a prosecution witness was examined in chambers with defense counsel participating but without defendant being present. The purpose of the examination was to determine from the witness the nature and circumstances of the making of supposed hearsay admissions by one of the several defendants so as to know what the witness

---

[9] *People v LaMunion, People v Kasem,* and *People v Jaskulski, supra,* fn 8.

[10] See also *Brown v State,* 372 P2d 785 (Alas, 1962), involving a hearing to hold defendant's wife as a material witness wherein she was questioned as to waiver of the matrimonial privilege, the Court concluding that under those circumstances due process required defendant's presence *as if* at trial.

could testify to and to meet or avoid possible objections. The Court found no error, ruling (1) that there was no prejudice to defendant since the purpose was to protect him by foreclosing improvident recitals of inadmissible hearsay; (2) that the examination was in the nature of a conference on a point of law; and (3) that there was no objection, defendant in effect agreeing through his attorney who participated.

In the instant case, however, it is clear that the in-chambers examination of the witness Young was not conducted for the purpose of protecting the rights of the defendant. While it may be argued that there was not a great deal that the defendant could do to assist his attorney in an examination bearing on a bargain between the witness and the prosecution, inquiry into that bargain was but a part of defendant's challenge to the credibility of the witness. Young was the principal witness against defendant and his credibility was vital. That credibility was being successfully impeached before the in-chambers examination, and the in-chambers examination exploring the bargain was inseparable from Young's testimony before the jury, having a potential for affecting that testimony impossible to evaluate in advance. That the effect appears minimal in hindsight does not alter its nature. Here, unlike *Sinclair*, defendant's counsel did not approvingly participate in the in-chambers interrogation, but strongly objected to the trial court's interruption of his cross-examination. We conclude that the proceedings in chambers were such that they might affect a substantial right of the defendant, and that his absence denied him due process under the Fourteenth Amendment.

Reversed and remanded for new trial.

All concurred.